And Mr. Bernhardt, whenever you're ready, we'll hear from you. Thank you, and may it please the court. I'm Brian Bernhardt, and along with my colleague Matthew Learberg, we represent the appellant George Hadden. This case involves sentence enhancements, but in a larger sense, it's about government overreach. The law requires the government to follow certain rules in order to enhance a sentence, but when it's here, the government cuts corners, it fails to meet its burden. Over the course of this case, in the draft PSR, in the final PSR, and at sentencing, the government has shifted around five different alleged predicates to support two different sentencing enhancements, but there is at most only one predicate, and the government therefore is not entitled to any enhancements. We request that this court find, as a matter of law, that the alleged predicates for Michigan criminal law robbery, North Carolina second degree kidnapping, and one of the two Michigan drug offenses do not qualify as either ACCA predicates or career offender predicates, and remand the case back to the district court for resentencing without regard for those alleged predicates. Brian Bernhardt Counsel, can you, have you figured out what the guidelines range would have been if your client was classified as neither a career offender nor an armed career criminal? George Hadden The guidelines range would have been about 50 percent. The count three, which was enhanced to a 15-year minimum, would have been a 10-year maximum. So when you go to the guidelines range, it would have, instead of being 20 years that he received, the guidelines range would have been closer to around 120 to 150 months. So roughly about 50 percent, maybe a little bit more than 50 percent. Brian Bernhardt I got, we got 152 to 172, but I guess, either way, I take your point. It would have been substantially less, no matter what. George Hadden Yes, sir. Brian Bernhardt And what about if he were just a career offender, but not an armed career criminal? George Hadden In this case, if he was just a career offender, the district court made it clear that he would apply the same sentence. That's why in this case, we believe that instead of there being five predicates, there's only one predicate at most, and therefore not a career offender. Brian Bernhardt Knock it down to just one rather than knocking it down to two. George Hadden Yes, sir. With regard to the Michigan felonious assault charge, the question is whether it's a violent felony. And the question underlying that is whether it has as an element the use, attempted use, or threatened use of force. And the law requires us not to look at the actual facts of what happened that are set forth in the PSR, but the elements of the crime, Michigan felonious assault. Those elements, according to Michigan law, are assault with a dangerous weapon with the intent to injure or place a victim in reasonable apprehension or battery. That third element is broken down in other Michigan cases to require forceful or violent touching. And that's broken down to mean the use of forceful, I'm sorry, the use of physical force against another person so as to harm or embarrass another person. And it's this or embarrassment part that is the crux of our argument. The question here regarding whether this statute constitutes a violent felony does not require there to be any kind of touching. It does not require minimal touching. It does not require violent force. Instead... But you have to put all the other elements. This was analyzed in some depth by Michigans in the Sixth Circuit, and the Sixth Circuit analyzed this in some depth and concluded it was a qualifying offense. And the question I suppose is, while we're not bound by the Sixth Circuit decision, they're on the scene, and if it's a reasoned opinion, wouldn't we be entitled to follow that? This court can choose to follow the Sixth Circuit opinion in U.S. v. Harris if it likes. However, there are two issues with that case. The first, that case never talks about the or embarrass part of the law. It goes through the elements. It ignores the definition. What you're arguing is, I mean, it's holding was that it qualified, the offense qualified. And there are a lot of criteria for reaching that as to how the normal enforcement is or how it's understood. The fact that there are other elements involving a deadly weapon or whatever, specific intent, these all play into it, and you focus on one little possibility, which is just literally impossible to conceive with all the elements, that I've tried to conceive it. And I know you have that fraternity or sorority example, whatever. But it seems to me, if we find the court rational, Michigan's not in our circuit, and we do look at North Carolina state cases regularly and assess them under our federal statutes. But here we have a fairly detailed reasoned opinion that addresses this very issue. And it seems to me, the reasoning was pretty persuasive, I must confess. We're not bound by it, as I said. But go ahead and make your arguments. It's all right. Yes, sir. It was a reasoned and detailed opinion, but the reasoning and the detail completely ignored the or embarrassment part of the statute. The requirement to be convicted- It didn't ignore it, it quoted it. It did not. In the part of the case where it was discussing the elements, it left out the part about harm or embarrassment. And it made a conclusory statement that because a dangerous weapon was used with the potential for harm, therefore, this statute was a violent felony. A dangerous weapon with specific intent to harm. Now the question is, sure there may be a fallout of embarrassment, but you still have those other elements overriding that are actually necessary. So you can't isolate one term. You have to look at all the elements of the statute and see whether it creates a violent felony. Yes, sir. And if you look at all the elements of the statute using embarrassment instead of physical harm, you can conclude that a defendant can violate the statute by using a dangerous weapon to make another person fear the use of physical force to become embarrassed. And that's the part of the analysis that the Michigan Statistics Circuit did not look to. They did not take into account that you could make the person fear the use of physical force to become embarrassed. And we're required- With a deadly weapon. I'm sorry? With a deadly weapon, right? This isn't just assault in general. This is assault with a deadly weapon. So the hypo you have to posit is that I use or threaten to use force in a way that causes a person to fear physical harm or embarrassment. But under this statute, I have to do that with a deadly weapon. With a dangerous weapon, yes, sir. A dangerous weapon, sorry. And there is a case, People v. Webb, that came out last fall in Michigan. It's a different statute. It was an assault against a prison guard, but the language that had to be satisfied in order to convict that defendant also required the use, attempted use, or threatened use of force. And so the court in that case went through the same analysis that I'm going through here regarding- Did that statute require a dangerous weapon? That statute did not require a dangerous weapon, but the portion that I'm focusing on is the use of force. I acknowledge that there's a dangerous weapon in this case, but I want to focus on the force element because the force is what relates to harm or embarrassment. How did you use the dangerous weapon? Did you use it with the intent to use physical force so as to harm or did you use it to embarrass? And if you used it to embarrass, then it's not a violent felony because you can make another person fear the use of physical force to become embarrassed. And because there are these two different options, either one of which could have been the case, we're required to look at the one that is the most innocent conduct. We don't look at the PSR to see what actually happened. We don't look at facts to see what actually happened. We look at the elements. You have cases under the ACCA, including our relatively recent decision in MAC, that once again says, yes, we do have to look at the language, we have to look at the elements, we don't look at the defendant, but there is at some point also a limit at which we look at fanciful hypos of when people cannot show that anyone was actually prosecuted for something like this. So there's tension in our precedent. I agree with you. We do not look at what your specific client did, but we also do have cases saying there is a limit to the fancifulness of the hypo that we will entertain under this approach, right? Yes. And I have two responses to that, and I'll try to be quick because I do want to discuss some other matters. One is People v. Webb, where the prisoner spit on a prison guard in the same language that we're talking about, forceful and violent touching. When the court analyzed that forceful and violent touching, it did so within the context of embarrassment. That court in People v. Webb didn't focus on physical harm because it was spitting, they focused on how spitting could cause embarrassment, how it could cause injury to pride, and that's the grounds that they determined that violent force had been used because of the embarrassment. So there is a case that talks about embarrassment. Second, to the extent that we're looking at is it realistic for this to happen, I would undermine the realistic possibility test somewhat, noting that the defendant does not have to prove the government's prosecutorial habits, and that the test requires looking at the facts of the crime, but we're not supposed to look at the facts of the crime. So I think that that realistic possibility argument is undermined somewhat. Can I turn you then to a different question of the middle? So let me just make sure I understand this. You agree that the two drug offenses are qualifying, and your argument on those, though, is that they're potentially not on different occasions, but you agree that standing alone the drug offenses are qualifying, right? Yes, sir. Our argument is that the government has conceded, in fact, that they are not two occasions. No, sure, sure. But I guess when you sort of began your argument saying, given the district court's statement, you've got to knock out all but two, you've got to knock out all but one. Yes. So, but one of those is going to be one of those drug, at minimum, one of those is going to be one of the drug offenses. That is correct. Okay. And let's bracket away the two drug offenses. So then why isn't the easiest way to decide this case that, say, the second one is North Carolina robbery, which this court has held is a predicate? Correct. The reason is because the government not only waived that argument, they expressly disclaimed it during sentencing. If you look on page 49 of the joint appendix, the government actually stated it didn't believe it necessary in this case to use common law robbery as a predicate because it was relying on other predicates, including second-degree attempted kidnapping, which, on brief, it has conceded. So the government... They didn't think it was necessary at the time because at the time this court had said it's not, right? Correct. Having said that, even though the government only needed three predicates to get an act enhancement, it still argued for four. So why not argue for five? They could have done that. In fact, they could have argued for more had they wanted to. They could have asked the district court to do something that under existing Fourth Circuit law the district court couldn't do? Yes. They could have asked. Sure, but they know what the result would have been. The district court would have said, nice try, I can't do that. Correct. And as it would have turned out, Stoeckling had already been decided. The judge made it clear that he didn't believe that Gardner was still good law. In fact, shortly thereafter, this court decided Gardner... We don't get to anticipate our overruling one of our own cases. Understood. But that doesn't mean that the government could not have still argued for it and then expressly preserved it for appeal. Instead, they expressly disclaimed it and said, we don't need it. And when you disclaim under U.S. v. Harper a 2016 unpublished opinion of this court, when you expressly disclaim, then you cannot use it later on. So on JA-48, doesn't the court pretty clearly say they think the government is preserving the argument? So I'm quoting what the district judge says. And then I feel confident that Ms. Partain is going to preserve a Stoeckling argument with respect to whether Gardner survives, but Gardner says what it says. And then literally on JA-49, Ms. Partain says, and as to 25, you're exactly right, we would preserve an argument concerning the validity of Gardner. How is that not preserving? We don't think that that's sufficient. We discussed that in our brief. It was the court... So it would help your case much better if you weren't making frivolous arguments. I mean, when somebody says, I'm preserving this argument for appeal, and the whole explanation is why, because Stoeckling put it into doubt, you say it wasn't preserved. It's sort of absurd, isn't it, on its face? We don't believe so, Your Honor. We believe that it's the court that suggested it. It's the court that wanted to preserve it, and the government simply agreed. The government never... What's wrong with that? The government says we are preserving it. Now, could it have been any clearer? Yes, sir. We believe it could have been. So what should they say? We mean it? The government could have, during the colloquy discussing Gardner and Stoeckling, and whether Gardner was still good law after the decision in Stoeckling, could have said, we believe that common law... We believe that second degree... I'm sorry, that we believe that the predicate is valid, and we'd like to preserve an objection on that point. Instead of letting the court do the work for them. This is a very easy box for the court to check. It wasn't the court preserving it. It was a dialogue between the parties, recognizing that Stoeckling had put our prior opinion in doubt. And, of course, that was confirmed shortly thereafter by Dinkins. But they didn't have that foresight, but the fact is that issue was being preserved. That was discussed back and forth, and the government confirmed, yes, we're preserving that argument. But at the same time, your honor, the government... You're arguing that they didn't preserve it. Now, doesn't that sound... Your honor, I understand what you're saying, but we believe the language on page 49 of the joint appendix, where the government says it did not believe it necessary to argue for common law robbery in this case, is a disclaimer. The government says we want to preserve that issue for appeal, and you say because it wasn't made clear, we have to construe now that the government waived that issue. Is that it, or forfeited? We think that it's questionable whether the government did actually preserve it, given its language elsewhere, saying that they didn't believe it necessary in this case, and we believe that... It may not be necessary, because there are other offenses. On the ACCA, there were at least four offenses that were being seriously considered. It may be the 2015 common law robbery. You have the potential for two drug offenses. You have the 2001 Michigan assault. All of those were in play. And the court, I think, ultimately, well, it sounded to me that the Michigan assault and the two drug offenses are the clearest, myself, but the common law robbery, you had that discussion. Yes, sir. If I may talk about the two Michigan drug offenses, it appears to us in the July 25th Rule 28J letter that the government has, in general, conceded that the district court committed error based on Wharton. The government did claim in that letter that we did not raise, that the appellant did not raise the issue. But, if you look at the transcript, the sentencing transcript, the appellant did raise an objection to the drug charges. It was under a different legal theory. They argued under U.S. v. Brandon that the drug quantity wasn't sufficient. They did... I thought the only issue there is on different occasions. It's two weeks apart. Yes, sir. It's two weeks apart, and under, at the time, the district court thought that that was sufficient, because it wasn't... that issue, that legal issue, was not discussed... The court suggests pretty strongly and wouldn't know that's sufficient. Well, the Northern District of Virginia, last fall, would suggest otherwise. There was a case tried to a jury where the drug offenses occurred in 2005, June of 2013, and October of 2013, and a jury in the Northern District of Georgia determined that that all took place on one occasion. This is a two-week period, and we believe that, at a minimum, the case ought to be remanded for a jury decision on whether it's one occasion or two occasions. It's certainly possible that a jury in the Eastern District of North Carolina would come to the same conclusion as one in the Northern District of Virginia. So this is an issue that was raised by appellant under a different legal theory than we're arguing now, but it was certainly raised. I see my time's coming to an end. If there are no further questions, I'll preserve.  Thank you, Mr. Bernhardt. Mr. Goldman? Good morning, Your Honors, and may it please the Court. Ross Goldman for the United States. I just want to start by answering a question that Judge Heitens asked. As we calculated, if Mr. Hadden were neither ACCA nor a career offender, I believe his guidelines range would be 92 to 115 based on a base offense level of 23 in a criminal history category of 6. If you take both of them out, yes. And I believe your other question involved if he was not ACCA but if he was a career offender, and I believe his guidelines there would be the same, 262 to 327 under 4B1.1C3. So I just wanted to answer those questions at the outset. As we explained in our answering brief in this case, there are four ACCA predicates. I didn't quite understand that response. If you took both enhancements away, what would be the range? As we calculated, it would be 92 to 115. And then if you had... Plus the consecutive 60 on the 924C. If you had just the career offender, what would you have? 262 to 327. So he was sentenced at 240. Correct. As we explained in our brief, there are four ACCA predicates. The statute only requires three. There are three career offender predicates when the guideline only requires two. So even if this court were to have doubts or invalidate one of either, the sentence would still be legally correct. Procedural... Sorry, I taught procedure for years. A procedural question about the North Carolina robbery. Is it a problem that you didn't cross-appeal on that issue? Did you need to cross-appeal? No. I think it's very clear in a Supreme Court precedent that an appellee does not need to cross-appeal. If they're not seeking to change the judgment, then there's no need to cross-appeal. And in criminal cases, the judgment is the sentence. That is the... Correct. It's the judgment of conviction. We are asking for this court to affirm. And so there's no need for the government to cross-appeal to ask this court to affirm on a basis that the district court did not rely on. It's the principle that this court can affirm on any basis supported by the record. And was any basis supported by the record and properly raised before the district court, which we had a colloquy there, but yes. Sure. And I think, you know, as the colloquy, I think, made clear and as we made clear in our 28-J letter on this, I think it was completely preserved. Everyone understood that the question was whether Gardner survived Stokeling. And you know, the government's position was it did not. That's the position this court ultimately took in Dinkins. And so I don't think there's any real question. And there's certainly no dispute now that the predicate qualifies. The dispute is whether this court is entitled to treat it as a qualifying predicate based on the record. And we think there's rather obviously is the case that this court can. On the Michigan assault predicate, assault with a dangerous weapon predicate, you know, counsel on the other side focused on the or embarrass language. And I think the easiest way to respond to that is to remember that the ACA does not care about the ultimate reason why a defendant used, attempted to use, or threatened to use physical force. There are some statutes that do require proof of a motive. The ACA is not one of them. And so to sort of play off of the sorority hypothetical, if a fraternity brother were to hold a pledge at gunpoint and say, you have to go to class with blue hair and blue makeup over your face because part of pledging is to be embarrassed, but does it at gunpoint, the use of the gun is the threatened use of physical force. It doesn't matter that the pledge ultimately didn't want to hurt, that the fraternity brother didn't want to hurt the pledge, but rather wanted to embarrass him. The ACA doesn't care about the why. The ACA cares about whether there was an... I think Judge Sutton explained that. He actually quoted the embarrassment language from the Michigan cases and concluded that it's the force that was threatened there and went through it and said it qualifies. That's exactly right. And it's very similar to, and we cite the first circumcision in Wendleton, which held that the Massachusetts assault with a dangerous weapon statute, which is in all material respects the same as Michigan's, also qualifies as an act of violent felony for the same basic reason. I guess in the gun, I'm not sure the gun hypo is the really tough hypo for you because in that instance, I'm still... Although my aim is to embarrass you, not to harm you, I'm still using the gun in its gun-like capacity to threaten. If I point a gun at you, the implicit threat is I will shoot you, and that is unambiguously physical force. I'm trying to imagine a world in which I'm using a gun, but not as a gun. I'm using a gun... It's difficult to do this in a way that's appropriate for this setting, but you could I'm not threatening to let... You know what I'm saying? What do I do with that kind of hypo? So two answers to your Honor's question. One is, and it does relate to something that counsel on the other side said, there's no reasonable probability that the statute would be used that way. Taylor does perhaps cast some doubt on reasonable probability as applied to federal predicates. The court's very clear in Taylor, but not as to state predicates. And Mr. Hutton has never come up with a case, we've not found a case, where this kind of, your Honor's hypothetical is positive. But then more as a legal matter, I'm not even sure that would qualify as a predicate under the Michigan statute. What use of a dangerous weapon means, and this is quoting from Harris, is any object that is used in a way that is likely to cause serious physical injury or death. So if there is some kind of mock gun that everyone knows is a fake gun and no one knows and no one thinks that the gun is going to be used to hurt anybody, then arguably that you'd have the Michigan predicate in that case. But I think the insight that Judge Sutton drew for the Sixth Circuit in Harris and that the First Circuit drew in Wendleton is, and this is the differentiator between assault as a general matter and assault with a dangerous weapon, is that the use of the dangerous weapon at the very least will categorically involve the threatened use of physical force. And that's why... Back to your Taylor point, what would be the basis for having a different rule for federal and state predicates? I mean, I understand the Supreme Court in Taylor is talking about federal predicates, but why would we have a different rule? So what the Supreme Court talked about in Taylor was, it sort of located it in federalism concerns, that when a federal court is interpreting the bounds of a federal statute, that there's no need to, or there's perhaps less of a need there to wonder about how a federal court might or might not allow a statute to be applied. But when you're looking about, when you're considering a federal court's treatment of a state court and a state statute, that there is some amount of deference that has to be applied. It's not fully spelled out. Certainly this court has continued to apply reasonable probability. I don't... That's not the... I mean, that's an important point, I think, in this litigation. It's not the feature point. I think the feature point here is that there is just no way to violate this Michigan assault with a dangerous weapon statute without, at the very least, categorically threatening or attempting physical force. Let me preface this by saying I have no idea if... I don't think it matters here, but I'm just curious. So my understanding is, in terms of the drug offenses, it is now the government's position that these are apprendi-facts that have to be proven to... If the question is whether I did something on different occasions than the other, that is now an apprendi-fact, according to the government? Yes. Okay. So in other words, so then why wouldn't it have been plain error here to use both of the drug counts? Again, I don't think the district court needed to use both of the drug counts, but assuming for the sake of argument, why isn't it plain error to have used both of the drug counts? So several responses to that, Your Honor. First, we brought the department's new sort of wooden position to the court's attention because we thought it was consistent with our obligations to the court. Having said that, we don't think that the Sixth Amendment wooden issue is actually in this case. It's not something that Mr. Haddon has ever raised, either in district court, in his opening or reply brief, or even in response to our 28-J letter. And in fact, in his 28-J letter where he points to the recent jury verdict, he uses that as evidence that the district court plainly erred in finding that these, as a factual matter, that the offenses occurred on separate occasions. So we don't think that the Sixth Amendment issue is in this case. Even if this court were to conclude otherwise and think that it is, at the very least it would be, or at most, I should say, it would be reviewed for plain error. In that respect, we would concede prong one. We would concede that there was error because in the government's view, this is something that is either something that a defendant has to admit or a jury has to find. We would... It's clear and obvious because... It's not clear... The error is not clear and obvious because this court held in Thompson in 2005 and then reiterated in Daniels post-Wooden that, in fact, this is a matter for the district court to resolve. Every circuit before Wooden was... Every circuit's law was to the same. And so... It may also be that it hadn't been fully resolved. Wooden didn't resolve the issue. Wooden explicitly... And Almond Doris explicitly said 924E is a recidivism statute that is a sentencing fact, not a... Not goes to the court. Correct. So, Wooden... We don't need to get into that, I don't think, here for the reasons sworn by Judge Hytens, but... I agree. Fully agree that the court doesn't need to get into that. But just to answer Judge Hytens' question, I mean, in Daniels, which was post-Wooden, the court sort of said that it was bound by Thompson in rejecting the... And we just came out with the decision in Moon, which is post-Wooden, and held that it's still a sentencing fact that doesn't go to the jury. Correct. So that's why there would be no clear and obvious error. To finish out the answer to Judge Hytens' question, to show an effect on his substantial rights, Mr. Hadden would have to show that if he knew that this was something that a jury was going to have to find, that there's a reasonable likelihood he would not have pleaded guilty. You know, relating back to my first point that this claim is not in this case, it's not a showing that he's ever tried to make. So that's the sort of answer to Your Honor's question about the Sixth Amendment aspect of the Wooden claim. On the merits, the drug convictions were two weeks apart. There's no dispute that Mr. Hadden engaged in the conduct underlying those two convictions two weeks apart. Were they at two different locations? We don't know. Or do we? We don't know. We don't know. I tried to find it. I couldn't see. Yeah, it was the same drug to Michigan State Police officers, two weeks apart. This Court's pre- and post-Wooden case law, as well as Wooden itself, I think makes, and this Court has said post-Wooden, it was outcome-determinative that offenses were committed weeks apart from each other. The Northern District of Jury... Wouldn't acknowledge that the most common differentiator is a day apart. Correct. And seemed to suggest that that was a very strong indicator. And here we have the two weeks. Two weeks apart. Of course, that doesn't lessen the message of Wooden, which is a factual question. That's right. And indeed, letter low, the offenses were an hour and a half apart. And this Court said they were committed on different occasions. And this Court... I know, but I think in Wooden, that would be, we'd have to relook. Maybe, but I would only make the point that in Daniels, this Court said that letter low is consistent with Wooden. And so, but I take, but again, I think... It was unpublished, to be fair, it was unpublished. It was. So the Court is not bound by that. I mean, Justice Gorsuch, in his concurring opinion in Wooden, noted that letter low was consistent with the majority in Wooden's sort of more holistic understanding of what constitutes different occasions. But basically, on any metric, I think the District Court was right that these were committed on separate occasions. Is that it? It is. Thank you, Your Honor. Thank you. Mr. Bernhardt. Thank you. Just a few brief points. I agree with my colleague that ACCA doesn't care about the reasons why, but ACCA does care about the possibilities. One of the possibilities is the use of physical harm to embarrass. Now, if we're only going to say that because there was a dangerous weapon, as a matter of law, this is a violent felony, then it raises the question, why do we have, with intent to injure or place victim in reasonable apprehension of battery, which when defined down comes down to using physical force against another person so as to harm or embarrass? Why would we imagine that the Michigan courts are imposing an element that's not required? They did do that. So simply because there's a dangerous weapon involved is not determinative. This statute cannot be violated without a dangerous weapon. If you read the opinion in the Michigan cases that are cited in Harris, they cite that embarrassment. They also cite the requirement of physical force and what that meant and the intent, specific intent in that case, they cited numerous elements and came to the same conclusion that this was a real proffer of physical injury, of force. And the consequence that it results in embarrassment as opposed to injury was overridden by all the other elements that have to be demonstrated. And that was explicitly explained. And I would note, Your Honor, that this court, as has been mentioned, is not bound by the Sixth Circuit. And there are other examples where U.S. v. Taylor, for instance, where we did not agree with other circuits and were proven to be correct by the Supreme Court. I would posit here that the Michigan, I'm sorry, that the Sixth Circuit analysis of the Michigan statute was incorrect because it did not take into account the embarrassment requirement. It did. It recited it. It quoted it. And then it said in the next paragraph, in light of all the elements, and it emphasized that. It did, Your Honor, but when it recited the facts and discussed the facts, it did not address embarrassment at all. The court, you are absolutely correct that the court recited all the law and in that recitation of the law noted physical harm or embarrassment, but then it completely ignored the embarrassment prong in making its conclusion. And we would posit that if you ignore the embarrassment prong, that the case is decided wrongly. The last point I'll make, if I may, is regarding the drug charges. It's been repeatedly stated that two weeks is sufficient, but I would again point out that it was 13 years apart in the Northern District of Georgia where the jury decided that it was one occasion, not two and not three. Hard to give us much help because we don't know what the facts and circumstances were, what was said, what was done, how it was done, how it was charged, what the investigation consisted of. And we have a jury that's instructed and not making the determination of the significance of the facts that were set forth in the... May I have additional time to answer that question, Your Honor? That is true, but we also lack those facts in this case. In this case, all we know is that they took place two weeks apart. So if we only know they were 13 years apart, it's the same. Thank you very much. Thank you, Mr. Bernhardt. I noticed you were court appointed. Is that right? Yes, sir. I want to express our appreciation. That's a genuinely important service to the court. It makes the system work, and your client can appreciate that you handled this well for him. Thank you very much.
judges: Paul V. Niemeyer, Toby J. Heytens, Henry F. Floyd